IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MATTHEW O. MIXON,

Plaintiff,

vs.

MD JACQUELINE ESCH, in her individual capacity; and SANDRA VANSANT, in her individual capacity;

Defendants.

**8:17CV325**

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' Motions for Summary Judgment. (Filings 64 & 79.) For the reasons that follow, Defendants' motions are granted.

## I. BACKGROUND

Plaintiff Matthew O. Mixon ("Plaintiff") originally filed this action on September 6, 2017, when he was confined in the custody of the Nebraska Department of Correctional Services ("NDCS"). (Filing 1.) Plaintiff has since been released from NDCS custody and has been granted leave to proceed in forma pauperis as a non-prisoner. (Filing 57.)

The operative pleading, Plaintiff's Second Amended Complaint (filing 44), seeks damages for injuries Plaintiff alleges he suffered as a result of being deprived of necessary seizure medication while he was incarcerated in the Douglas County Department of Corrections ("DCDC") in late 2015. In a Memorandum and Order entered January 2, 2020, the court determined that Plaintiff alleged "a plausible claim of deliberate indifference to Plaintiff's medical needs under the Eighth and Fourteenth Amendments against the DCDC medical employees in their individual

capacities." (Filing 45 at CM/ECF pp. 4–5.) However, because Plaintiff failed to make any attempt to identify the specific individuals involved in his allegedly deficient medical care, the court required Plaintiff to identify the individual DCDC medical employees by name to allow the matter to proceed to service of process. (*Id*. at CM/ECF p. 5.)

Plaintiff identified Defendants Jacqueline Esch, MD ("Dr. Esch"), and Sandra Vansant ("Vansant") (collectively "Defendants") by name on March 11, 2020. (Filing 50.) Vansant and Dr. Esch were served with summons of process on June 18, 2020, and September 12, 2020, respectively. (Filings 60 & 74.) Defendants now seek dismissal of this action because Plaintiff's claims are barred by the applicable statute of limitations, Plaintiff has failed to plead any applicable tolling excuses, and the relation back doctrine does not apply.

## II. STANDARD OF REVIEW

Defendants acknowledge that a statute of limitations issue is normally pled as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Wycoff v. Menke*, 773 F.2d 983, 984–85 (8th Cir. 1985) (quoting *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir. 1983)) ("[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a 12(b)(6) motion to dismiss.") However, because they have submitted affidavits in support of their respective motions, Defendants' motions are properly considered as summary judgment motions. If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

When a motion to dismiss is converted into a motion for summary judgment, a party against whom this procedure is used is normally entitled to notice that conversion is occurring. *Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d

787, 791 (8th Cir. 2011). But where the movant designates its motion to dismiss alternatively as a motion for summary judgment, and the nonmovant submits materials outside the pleadings, a district court is not required to give formal notice that it will treat a motion as one for summary judgment.[1] *Hearing v. Minnesota Life Ins. Co.*, 793 F.3d 888, 893 (8th Cir. 2015). That is the situation here: Defendants moved for summary judgment, submitting evidence in support of their motions, and Plaintiff has responded and presented evidence in opposition to the motions. (*See* Filings 77, 82, & 83.) Under such circumstances, treating each motion as one for summary judgment is appropriate. *See George v. City of St. Louis*, 26 F.3d 55, 57 (8th Cir. 1994).

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id*. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge.

---

[1] Plaintiff at least had constructive notice that the court would treat the motions as ones for summary judgment given the court's acknowledgement of the filing of Vansant's motion and the extension of time granted to Plaintiff "to file a brief in opposition to Vansant's summary judgment motion." (Filing 70 at CM/ECF p. 2.) *See Barron ex rel. D.B.*, 655 F.3d at 791–92 (quoting *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1005 (8th Cir.2000)) ("The district court is not necessarily required to give affirmative notice: '[C]onstructive notice that the court intends to consider matters outside of the complaint can be sufficient.'").

*Id*. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id*. "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying 'facts that might affect the outcome of the suit.'" *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791–92 (8th Cir. 2011) (cleaned up). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

### III. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The statement of facts should consist of <u>short</u> numbered

paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (emphasis in original). "The statement must not contain legal conclusions." *Id.*

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion for summary judgment." NECivR 56.1(1)(a) (emphasis in original). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (emphasis in original).

## IV. EVIDENCE PRESENTED

In this case, Defendants' Briefs in support of their respective motions for summary judgment each contain a separate statement of material facts in accordance with the court's local rules with references to the record and properly authenticated evidence. (Filing 66 at CM/ECF pp. 2–15; Filing 81 at CM/ECF pp. 2–14.) The documents referenced include the affidavit of Vansant (filing 65-1), the affidavit of Dr. Esch (filing 80-1), Plaintiff's various pleadings (filings 1, 6, 7, 12, 13, 18, 36, 44, & 50), and several court orders (filings 10, 35, 42, 45, & 52).

In order to discuss Plaintiff's responses to Defendants' summary judgment motions, the court first must lay out some background information. Vansant filed her Motion for Summary Judgment, Index of Evidence, and Brief in support thereof on August 7, 2020. (Filings 64–66.) On August 19, 2020, Plaintiff notified the court that his address had changed due to his recent incarceration in the Cass County Jail. (Filing 67.) On that same date, Vansant filed a Certificate of Service certifying that on August 19, 2020, she mailed her Motion for Summary Judgment, Index of Evidence, and Brief in support thereof to Plaintiff at his updated address. (Filing 68.) On September 3, 2020, the court entered a Memorandum and Order acknowledging that Vansant had mailed her summary judgment motion and supporting materials to Plaintiff at his updated address and gave Plaintiff "until September 14, 2020, to file a brief in opposition to Vansant's summary judgment motion. *See* NECivR 7.1(b)(1)(B); 56.1(b)(2); Fed.R.Civ.P. 6(d)." (Filing 70 at CM/ECF p. 2.) On September 17, 2020, the court received a letter from Plaintiff stating he had a new address. (Filing 72.) Subsequently, on September 21, 2020, the court's September 3, 2020 Memorandum and Order (filing 70) was returned to the court as undeliverable addressed to Plaintiff at the Cass County Jail and was resent to Plaintiff at the address listed in his September 17, 2020 letter. (*See* Filing 73.)

On September 30, 2020, Plaintiff filed an unsigned "Response to Memorandum and Order" (hereinafter "Unsigned Response") in which he sought "to submit copies of medical records for proof of violation of plaintiff rights." (Filing 75 at CM/ECF p. 1). Plaintiff attached six pages of what appear to be medical records from the DCDC directly to his Unsigned Response with handwritten notes on the records. (*Id*. at CM/ECF pp. 2, 4–8.) On October 1, 2020, the Deputy Clerk issued a Text Notice of Deficiency stating the Unsigned Response was "considered deficient because the document is not signed" and required Plaintiff to "correct the deficiency within 15 days." (TEXT NOTICE 76.) On October 8, 2020, the court received a document essentially mirroring the Unsigned Response, except it was now signed by Plaintiff, and a prior blank page

6

appearing within the attached medical records on the Unsigned Response was removed. (Filing 77 (hereinafter "Signed Response").)

Dr. Esch filed her Motion for Summary Judgment, Index of Evidence, and Brief in support thereof on October 23, 2020. (Filings 79–81.) On November 18, 2020, the court received and filed a "Motion for Brief" (hereinafter "Brief") from Plaintiff. (Filing 82.) In addition to his Brief, Plaintiff filed a document captioned "Affidavit of Matthew Mixon." (Filing 83.) The affidavit itself is unsigned and not notarized but includes a Certificate of Service that is signed and notarized. (*Id.* at CM/ECF pp. 2–3.)

Neither of Plaintiff's responses to Defendants' summary judgment motions were filed in accordance with federal and local rules. First, Plaintiff's Signed Response to Vansant's motion was not properly filed.[2] *See* NECivR 7.1(b)(1)(A) ("The party opposing a motion must not file an "answer," "opposition," "objection," or "response," or any similarly titled responsive filing. Rather, the party must file a brief that concisely states the reasons for opposing the motion and cites to supporting authority.") Nor does Plaintiff's Signed Response include the required response to Vansant's statement of material facts. *See* NECivR 56.1(b)(1); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."). Moreover, the documents attached to Plaintiff's Signed Response were not identified in an index of evidence or properly authenticated as required by the court's local rules. *See* NECivR 7.1(b)(2)(B)

---

[2] Vansant also argues that Plaintiff's Unsigned and Signed Responses were untimely as both were submitted after the September 14, 2020 deadline set forth in the court's September 3, 2020 Memorandum and Order (filing 70). However, Plaintiff did not receive notice of the court's September 3, 2020 Memorandum and Order until sometime after September 21, 2020, when the order was resent to the address provided in Plaintiff's letter filed September 17, 2020. (*See* Filings 72 & 73.) Plaintiff's Unsigned Response was then received on September 30, 2020. Thus, for the sake of argument, the court will consider Plaintiff's Unsigned Response timely.

("[E]videntiary materials may not be attached to the brief but rather must be filed separately with an index listing each item of evidence being filed . . . ."); NECivR 7.1(b)(2)(C) ("An affidavit must identify and authenticate any documents offered as evidence.").

With respect to Dr. Esch's motion, Plaintiff's Brief in response was untimely. Plaintiff's Brief contains a certificate of service signed and notarized on November 14, 2020. (Filing 82 at CM/ECF p. 2.) His Brief was filed in this court on November 18, 2020, which is two days after the November 16, 2020 deadline by which Plaintiff was required to respond, giving Plaintiff the benefit of the additional time provided in Fed. R. Civ. P. 6(d).[3] *See* NECivR 7.1(b)(1)(B) ("A brief opposing a motion . . . for summary judgment must be filed and served within 21 days after the motion and supporting brief are filed and served."); (Filing 79.) Plaintiff's Brief also does not include the required response to Dr. Esch's statement of material facts. Additionally, Plaintiff set forth several assertions of "fact" in his Brief, but none of those facts were properly "set forth in a separate numbered paragraph" with "pinpoint references to . . . materials upon which [Plaintiff] relies." NECivR 56.1(b)(1); *see also* Fed. R. Civ. P. 56(c)(1).

Plaintiff did file an affidavit (filing 83) with his Brief, but Dr. Esch contends the affidavit is inadmissible as it is neither signed by Plaintiff nor notarized. Liberally construed, however, Plaintiff's references on page 1 of the affidavit to a "written or printed declaration . . . made voluntarily, and confirmed by the oath or affirmation of the party making it" and "[s]ee also certification" together with the included signed and notarized Certificate of Service on page 3 arguably complies with the requirement that the affidavit be acknowledged. *See* Fed. R. Evid. 902(8). Regardless, Plaintiff does not reference the affidavit in his Brief, and he also failed to file it with an index of evidence as required by NECivR 7.1(b)(2)(B).

---

[3] Rule 6(d) states that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d).

In light of the aforementioned defects in Plaintiff's responses, Defendants' statements of material facts will be deemed admitted for purposes of deciding the motion. *See* NECivR 56.1(1)(b)(1); Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."). Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

## V. RELEVANT UNDISPUTED MATERIAL FACTS

1.     On September 6, 2017, Plaintiff filed a Complaint against Omaha Police Department officers, the DCDC Medical Department Employees, Jacquelyn Morrison of the Douglas County Public Defender's Office, Julie L. Medina of the Douglas County Attorney's Office, and Douglas County, Nebraska. (Filing 1.)

2.     In the Complaint, Plaintiff made allegations against the Omaha Police Department ("OPD") for wrongful arrest and making "false claims" in their police reports. (*Id.* at CM/ECF p. 6.)

3.     In the Complaint, Plaintiff made claims that, while jailed at the DCDC, his medication for a seizure condition was withheld and also not given correctly. (*Id.* at CM/ECF p. 6–7.)

4.     In the Complaint, Plaintiff alleged the DCDC Medical Department jointly acted with "jail officials" and the OPD in "trying to kill this Plaintiff." (*Id.* at CM/ECF p. 7.)

5.     In the Complaint, Plaintiff made allegations against Jacquelyn Morrison with the Douglas County Public Defender's Office that she failed to properly represent him and was involved in a scheme with the OPD and the prosecutor of Plaintiff's criminal case, Julie L. Medina of the Douglas County Attorney's Office. (*Id.*)

6.     Plaintiff did not mention Vansant or Dr. Esch in the body of the original Complaint. (Filing 1.)

7.     Plaintiff never filed a Praecipe for Summons to serve the original Complaint, and never filed any Proof of Service that the original Complaint was ever served on any defendant or on Vansant or Dr. Esch. (*See* Docket Sheet.)[4]

8.     On September 7, 2017, Plaintiff filed a Motion to Amend his Complaint. (Filing 6.)

9.     Plaintiff attached several pages to the Motion to Amend in which he made additional allegations. (*Id.* at CM/ECF pp. 1–3.)

10.     In the Motion to Amend, he stated, "[T]here [are] no new defendants in their official capacities." (*Id.* at CM/ECF p. 1.)

11.     In the Motion to Amend, Plaintiff further stated, "Their is [sic] only 2 more Omaha Police Officers on 11/19/15 to add. Their is [sic] only the 8th Amendment of the United States Constitution violations to add from the start of date 09-07-2015 against the Douglas County Department of Corrections, Medical Department with deliberate indiference [sic] claim against medical defendants and jail defendants." (*Id.*)

12.     Plaintiff included just over two pages of factual and legal assertions against the defendants in the Motion to Amend. (*Id.* at CM/ECF pp. 1–3.) He made

---

[4] Plaintiff did file a "Subpoena for Service on Defendant and Summons" on September 28, 2017, which asked the clerk of the court to "issue subpoenas" on Robin Lemieux of the OPD, the Douglas County Attorney, Jacquelyn Morrison, and the mayor of Omaha. (Filing 8.) Plaintiff also requested "for all Defendants to be served a copy of the complaint." (*Id.*) The court construed Plaintiff's request as a motion for summons and denied the motion as Plaintiff had yet to pay his initial partial filing fee and the court had not yet conducted its initial review. (Filing 10 at CM/ECF p. 3.)

some new allegations against the OPD and other defendants, but much of the material mirrored or supplemented the already existing allegations in the original Complaint. (*Id*.)

13.    With regard to the medication allegations in the Motion to Amend, Plaintiff stated,

> When Plaintiff was first booked into jail on 11/19/2015, Plaintiff spoke to the Medical Dept. nurse of [DCDC.] . . . Plaintiff let the nurse above know he had not got [sic] his seizure medications yet for the evening and Plaintiff never received his medication until 48 hours later. . . . Plaintiff was not receiving his medications correctly or the right amounts and even other inmates [sic] medications and (he) plaintiff complained[.] . . . [T]hese medications were hurting Plaintiff by confusing [sic] dizziness, sleepy, no appetite, causing seizures, causing injuries from falling from the seizures[.]

(*Id*. at CM/ECF pp. 2–3.)

14.    In the Motion to Amend, Plaintiff also alleged the DCDC had him "on the 2nd floor where plaintiff had to walk up and down a flight of stairs with his seizure conditions which was life threatening and dangerous with his medical condition and not being on his proper medications." (*Id*. at CM/ECF p. 3.)

15.    The Motion to Amend did not identify any individuals involved in his medical care by name and did not mention Vansant or Dr. Esch. (Filing 6.)

16.    On September 28, 2017, Plaintiff filed a "Notice and Motion with Leave to Add Exhibits A through A-7." (Filing 7.) To said Motion, Plaintiff attached multiple OPD Incident Reports. (*Id*. at CM/ECF pp. 3–10.)

17.    Plaintiff did not mention Vansant, Dr. Esch, or any medical care or seizure medication complaints in the "Notice and Motion with Leave to Add Exhibits A through A-7." (Filing 7.)

18.    On November 3, 2017, the court entered an order on Plaintiff's Motion to Amend (in addition to several other pending motions). (Filing 10.)

19.    In its order, the court stated, "Pursuant to NECivR 15.1(b), the court will consider the additional allegations in Plaintiff's Motion to Amend (Filing No. 6) and the documents attached to Plaintiff's Motion for Leave to Add Exhibits (Filing No. 7 at CM/ECF pp.3–10) as supplemental to Plaintiff's Complaint." (Filing 10 at CM/ECF p. 3.)

20.    In its order, the court also stated it would not issue summons or serve a copy of the Complaint until Plaintiff paid his required filing fee[5] and the court had completed its required review of the Complaint "to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2)." (Filing 10 at CM/ECF p. 3.)

21.    On November 9, 2017, Plaintiff filed a "Brief in Support with Exhibits A-8, A-9." (Filing 12.)

22.    To the "Brief in Support with Exhibits A-8, A-9," Plaintiff attached the first page of a letter dated October 30, 2017. (*Id*. at CM/ECF p. 3.) Said letter was from Captain Mary Early in reply to Plaintiff's Grievance Petition submitted on October 26, 2017. (*Id*.)

23.    To the "Brief in Support with Exhibits A-8, A-9," Plaintiff also attached a copy of his Step One Inmate Grievance Form dated September 21, 2017. (*Id*. at CM/ECF p. 4.)

24.    In the Summary of Grievance, Plaintiff stated:

---

[5] Plaintiff paid his initial partial filing fee on May 7, 2018, after several extensions of time to do so. (*See* Docket Sheet; Filings 14, 17, 19, 21, 25, & 27.)

Medical Personal [sic] (is)(are) not ordering my medication—keeping it in stock as this medication is for serious problems where I can get seriously hurt for not taking it/not having it. From my previous two incarceration[s] 09-07-2015 and 11-19-2015, I had seizure after seizure and got injuries/hurt because of not having my medications and not the right amount.

(*Id*.)

25.     Plaintiff did not mention Vansant or Dr. Esch or identify any individuals involved in his medical care by name in the "Brief in Support with Exhibits A-8, A-9." (Filing 12.)

26.     Plaintiff did not include a Certificate of Service on the "Brief in Support with Exhibits A-8, A-9" or otherwise verify that any defendant, Vansant, or Dr. Esch was served with this Brief. (Filing 12.)

27.     On December 4, 2017, Plaintiff filed a "Brief in Support with Exhibit A-11." (Filing 13.)

28.     In the "Brief in Support with Exhibit A-11," Plaintiff made allegations against the DCDC for having him in what he called "unsafe housing" due to his medical condition. (*Id*. at CM/ECF p. 1.)

29.     Plaintiff did not discuss any failure to provide medications in the "Brief in Support with Exhibit A-11." (Filing 13.)

30.     Plaintiff did not mention or discuss Vansant or Dr. Esch in the "Brief in Support with Exhibit A-11." (*Id*.)

31.     Plaintiff did include a Certificate of Service on the "Brief in Support with Exhibit A-11," stating he had "sent all parties known a copy of this motion by US pre paid postag[e] on 11/29/2017." (*Id*. at CM/ECF p. 2.)

32.    Plaintiff did not state in the Certificate of Service on the "Brief in Support with Exhibit A-11" that it had been sent to Vansant or Dr. Esch, as non-parties. (*Id.*)

33.    On December 22, 2017, Plaintiff filed a "Brief in Support With Thift [sic] and Abused/Misconduct by Douglas County Correction and Exhibits A-13 A-14 A-15." (Filing 18.)

34.    In the "Brief in Support With Thift [sic] and Abused/Misconduct by Douglas County Correction and Exhibits A-13 A-14 A-15," Plaintiff did not discuss any failure to provide medications. (*Id.*)

35.    Plaintiff did not identify or discuss Vansant or Dr. Esch in the "Brief in Support With Thift [sic] and Abused/Misconduct by Douglas County Correction and Exhibits A-13 A-14 A-15." (*Id.*)

36.    Plaintiff did include a Certificate of Service on the "Brief in Support With Thift [sic] and Abused/Misconduct by Douglas County Correction and Exhibits A-13 A-14 A-15," stating he had "sent all parties known a copy of This Notice and Motion by US Pre Paid postage." (*Id.* at CM/ECF p. 1.) However, the Certificate of Service was dated "09/14/2017." (*Id.*)

37.    Plaintiff did not state in the Certificate of Service on the "Brief in Support With Thift [sic] and Abused/Misconduct by Douglas County Correction and Exhibits A-13 A-14 A-15," that it had been sent to Vansant or Dr. Esch, as non-parties. (*Id.*)

38.    On October 30, 2018, the court entered a Memorandum and Order after "conduct[ing] an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A." (Filing 35 at CM/ECF p. 1.)

14

39.    The court noted, pursuant to NECivR 15.1(b), that it considered the Complaint to include Plaintiff's Motion to Amend (filing 6), Motion for Leave to Add Exhibits (filing 7 at CM/ECF pp. 3-10), and Plaintiff's three "briefs in support" with attached exhibits (filings 12, 13, & 18). (Filing 35 at CM/ECF p. 1.)

40.    The court discussed the various allegations against the many defendants and ultimately found Plaintiff had failed to plead sufficient facts to sustain any of his causes of action. (*Id.* at CM/ECF pp. 5–12.) However, the court granted

> Plaintiff leave to file an amended complaint that states a claim under the Eighth Amendment upon which relief may be granted against Douglas County and/or the DCDC medical employees. Plaintiff should be mindful to provide, to the extent possible, any identifying information about specific DCDC medical employees who he alleges were deliberately indifferent to his medical needs and to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

(*Id.* at CM/ECF p. 11.)

41.    On November 26, 2018, Plaintiff filed an Amended Complaint. (Filing 36.)

42.    In the Amended Complaint, Plaintiff named as defendants "Douglas County Correctional Center, Mark Foxall-Director, Correct Care Solutions, Dr. Ash, and Douglas County Corrections Medical Department Employees." (*Id.* at CM/ECF p. 1.)

43.    In the Amended Complaint, Plaintiff alleged claims under 42 U.S.C. § 1983 for violations of the 8th and 14th Amendments. (*Id.* at CM/ECF pp. 2, 5.)

15

44.     In the Amended Complaint, Plaintiff stated his "injuries arise out of his arrest on September 7, 2015 and November 19, 2015, both times while being confined within the ('DCDC') for the same injuries." (*Id*. at CM/ECF p. 2.)

45.     In the Amended Complaint, Plaintiff alleged, "the Defendant's [sic], DCDC medical employees knew that Plaintiff needed medications, delayed giving him his medications, did not give him his medications correctly or in the proper amount and failed to properly house him while confined within [DCDC]." (*Id*. at CM/ECF p. 3.)

46.     In the Amended Complaint, Plaintiff asserted a claim against Mark Foxall in his official capacity and alleged the "Medical 'policy' or 'custom' provided by Douglas County Dept. of Corrections caused a violation of his constitutional rights." (*Id*. at CM/ECF p. 6.)

47.     In the Amended Complaint, Plaintiff asserted a claim against Dr. Ash and Correct Care Solutions, alleging "there is a continuing, widespread, and persistent pattern of unconstitutional misconduct by Douglas County Department of Corrections and Correct Care Solutions and that Douglas County's policy making officials were deliberately indifferent to or tacitly authorized the unconstitutional conduct." (*Id*. at CM/ECF pp. 7–8.)

48.     In the Amended Complaint, Plaintiff also alleged

> DCDC medical employees and Correct Care Solutions knew that Plaintiff needed medication for his seizure condition but refused to provide him his medications, or due [sic] the proper due diligence to investigate, delaying giving him his medications, and not giving him his medications correctly or in the proper amount[s]. As a result, Plaintiff experienced confusion, dizziness, sleepiness, loss of appetite, "SEIZURES", and injuries from falling due to those seizures.

(*Id*. at CM/EFC pp. 9–10.)

16

49.     Nowhere in the Amended Complaint was Vansant discussed or identified. (Filing 36.)

50.     Plaintiff never filed a Praecipe for Summons to serve the Amended Complaint naming "Dr. Ash" and never filed any Proof of Service that the Amended Complaint was ever served on any defendant or on Vansant or Dr. Esch. (*See* Docket Sheet; Filing 36.)

51.     On May 16, 2019, the court entered a Memorandum and Order regarding its "review of Plaintiff's Amended Complaint (filing no. 36) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)and 1915A." (Filing 42 at CM/ECF p. 1.)

52.     The court found that "[l]iberally construed, Plaintiff alleges claims of deliberate indifference to his medical needs against Defendants in their official and individual capacities." (*Id*. at CM/ECF p. 3.)

53.     The court found "the DCDC and/or the Douglas County Correctional Center is not a distinct legal entity subject to suit" and dismissed the claims against the DCDC. (*Id*. at CM/ECF pp. 3–4.)

54.     With regard to the claims against Foxall, Dr. Ash, and "the DCDC medical employees," the court dismissed the claims against them in their official capacities "without prejudice and without leave to amend." (*Id*. at CM/ECF pp. 6–7.)

55.     The court found "Plaintiff's Amended Complaint did not fix the problem that this court identified in its October 30, 2018 Memorandum and Order, and his amended pleading still fails to state a claim of deliberate indifference to his medical needs against Douglas County or against any Defendants in their official capacities." (*Id*.)

17

56.     The court also found, "Liberally construed, Plaintiff alleges claims of deliberate indifference to his medical needs against Foxall, Dr. Ash, and the unspecified DCDC medical employees in their individual capacities." (*Id*. at CM/ECF p. 7.)

57.     The court stated that, although plaintiff had named Foxall and Dr. Ash, he had failed to "allege any specific acts committed by them" and, therefore, "ha[d] failed to state plausible claims for relief against Foxall and Dr. Ash in their individual capacities." (*Id*. at CM/ECF p. 8.)

58.     The court, "[o]ut of an abundance of caution, . . . grant[ed] Plaintiff leave to file a second amended complaint that states a plausible claim of deliberate indifference to Plaintiff's medical needs against Foxall and Dr. Ash in their individual capacities." (*Id*.)

59. With regard to the "unspecified DCDC medical employees," the court found

> [i]n light of the liberal pleading standard afforded to pro se litigants, . . . that Plaintiff has stated a plausible claim of deliberate indifference to Plaintiff's medical needs under the Eighth and Fourteenth Amendments against the DCDC medical employees in their individual capacities. . . . However, Plaintiff has not provided "any identifying information about specific DCDC medical employees who he alleges were deliberately indifferent to his medical needs" as directed by the court in its Memorandum and Order on initial review. (Filing No. 35 at CM/ECF p. 11.) Normally, as a litigant proceeding in forma pauperis in this case, Plaintiff would be entitled to have service of process performed by the United States Marshals. However, the United States Marshal's Service cannot initiate service upon unknown defendants, and Plaintiff's claims cannot proceed against unspecified and unknown defendants.

(Filing 42 at CM/ECF pp. 8–9.)

60.     The court gave Plaintiff

> 30 days from the date of this Memorandum and Order to file a second
> amended complaint that sufficiently states his Eighth and Fourteenth
> Amendment claims against specific, named defendants. The second
> amended complaint must specify in what capacity defendants are
> sued, must identify each defendant by name, and must set forth all of
> Plaintiff's claims (and any supporting factual allegations) against that
> defendant. To be clear, Plaintiff's second amended complaint must
> restate the relevant allegations of his Amended Complaint (filing no.
> 36) and any new allegations. Plaintiff should be mindful to explain
> what each defendant did to him, when the defendant did it, and how
> the defendant's actions harmed him. Plaintiff is warned that any
> amended complaint he files will supersede, not supplement, his prior
> pleadings. Plaintiff is encouraged to use the court-approved form to
> draft his second amended complaint, which the clerk of the court will
> provide to him.

(Filing 42 at CM/ECF p. 9.)

61.     On June 5, 2019, Plaintiff filed a Second Amended Complaint. (Filing 44.)

62.     In the Second Amended Complaint, Plaintiff named "Douglas County Dept. of Corrections, Medical Care" as the sole defendant. (*Id*. at CM/ECF p. 1.)

63.     In the Second Amended Complaint, Plaintiff set forth the date of the events giving rise to his claim occurred from "11-16-2015 to 12-25-2015." (*Id*. at CM/ECF p. 5.)

64.     In the Second Amended Complaint, Plaintiff, again, alleged claims of failing to be given proper medical treatment and failing to be given his medication, and that said failures "constitute[d] a violation of the plaintiff[']s right to due

process under the Fourteenth Amendment and his right under the Eight[h] Amendment to be free from cruel and unusual punishment." (*Id*.)

65.     Plaintiff attached a two-page letter to his Second Amended Complaint describing his claim of failure to receive his medication. (*Id*. at CM/ECF pp. 12–13.)

66.     Nowhere in the Second Amended Complaint did Plaintiff mention or discuss Vansant or Dr. Esch. (Filing 44.)

67.     On January 2, 2020, the court entered a Memorandum and Order upon "review of Plaintiff's Second Amended Complaint (filing no. 44) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)and 1915A." (Filing 45 at CM/ECF p. 1.)

68.     In its order, the court stated, "As the court has previously explained, the DCDC or units within the DCDC is not a distinct legal entity subject to suit." (*Id*. at CM/ECF p. 4.)

69.     The court further stated, "Liberally construed, Plaintiff's Second Amended Complaint could be understood as being brought against the employees of the DCDC medical department in their individual capacities whose names Plaintiff alleges exist in the DCDC records." (*Id*.)

70.     The court found "the Second Amended Complaint states a plausible claim of deliberate indifference to Plaintiff's medical needs under the Eighth and Fourteenth Amendments against the DCDC medical employees in their individual capacities." (*Id*. at CM/ECF pp. 4–5.)

71.     The court "caution[ed] Plaintiff that this is only a preliminary determination based on the allegations found within the Second Amended

Complaint. This is not a determination of the merits of his claims or potential defenses to them." (*Id.* at CM/ECF p. 5.)

72.    The court then stated:

> [T]his matter cannot proceed to service of process against unknown and unidentified defendants. . . . Plaintiff has failed to make any attempt to identify the specific individuals involved in his allegedly deficient medical care nor does Plaintiff allege that he made any attempts to ascertain the names of the medical employees involved or that such attempts were unsuccessful. Therefore, the court will give Plaintiff 30 days in which to take reasonable steps to identify the individual DCDC medical employees and notify the court of their names, after which the court will initiate service of process.

(*Id.* at CM/ECF p. 5.)

73.    Thereafter, Plaintiff filed two motions to extend his time to designate specific employees. (Filings 46 & 48.) Plaintiff requested more time to allow for the processing of his medical records request to the DCDC and the processing of his payment for the related service charge. (*Id.*)

74.    The court granted both motions to extend, and Plaintiff was given until April 6, 2020, to identify the employees. (TEXT ORDERS 47 & 49.)

75.    On March 11, 2020, the court received a letter from Plaintiff identifying "MD Jacqueline Esch and Sandra Vansant" as "the individuals [sic] failed to provid[e] him his necessary seizure medication to complete his amended complaint." (Filing 50.)

76.    The March 11, 2020 letter was the first time Vansant was mentioned in this lawsuit.

77.    The March 11, 2020 letter did not contain a certificate of service or otherwise state it was sent to Vansant or Dr. Esch. (Filing 50.)

78.    On April 23, 2020, the court entered a Memorandum and Order, recognizing Plaintiff had submitted the names of two individual defendants. (Filing 52.)

79.    In its April 23, 2020 order, the court ordered the clerk of the court "to add Jacqueline Esch, MD, and Sandra Vansant, in their individual capacities, as Defendants in this matter." (*Id*. at CM/ECF p. 2.)

80.    In its April 23, 2020 order, the court ordered "Plaintiff's claims for deliberate indifference to his medical needs under the Eighth and Fourteenth Amendments [to] proceed to service of process against Defendants Jacqueline Esch, MD, and Sandra Vansant in their individual capacities. (*Id*.)

81.    On June 26, 2020, the United States Marshals Service filed a Process Receipt and Return showing Vansant had been served on June 18, 2020, at 1490 North 16th Street, Omaha, Nebraska, by leaving the documents with "Terri Speck," who was identified as "Director (DCDS)." (Filing 60.)

82.    On June 18, 2020, Vansant learned of this lawsuit for the first time when she read the papers served on her. (Filing 65-1, ¶ 5.)

83.    Vansant "had no notice or knowledge of this lawsuit or any lawsuit filed by Matthew Mixon against [her] or any other person or entity until June 18, 2020." (*Id*., ¶ 8.)

84.    Vansant "had never received a document from or about a lawsuit filed by Matthew Mixon against [her] or any other person or entity" prior to June 18, 2020. (*Id*., ¶ 6.)

85.    "The only documentation [Vansant] ever received or reviewed about the lawsuit filed by Matthew Mixon was the papers handed to [her] by Ms. Speck on June 18, 2020." (*Id.*, ¶ 7.)

86.    On June 19, 2020, Dr. Esch learned of this lawsuit for the first time when she consulted with an attorney after finding a note from the United States Marshal at her home on June 18, 2020. (Filing 80-1, ¶¶ 2–4.)

87.    Dr. Esch "was completely unaware that Matthew Mixon had filed a lawsuit at any time against [her] or any other person or entity" until her attorney informed her on June 19, 2020. (*Id.*, ¶ 5.)

88.    Dr. Esch "had never received a document from or about a lawsuit filed by Matthew Mixon against [her] or any other person or entity at any time" prior to June 19, 2020. (*Id.*, ¶ 6.)

## VI. DISCUSSION

Defendants contend that they are entitled to dismissal of Plaintiff's Second Amended Complaint because Plaintiff's claim under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs is barred by the applicable statute of limitations. Furthermore, Defendants maintain that the relation back doctrine does not apply to allow Defendants to be added as parties after the limitations period expired. Upon careful consideration, the court agrees.

### A. Statute of Limitations

"The applicable state law statute of limitations governs § 1983 claims." *Baker v. Chisom*, 501 F.3d 920, 922 (8th Cir. 2007). In Nebraska, § 1983 actions are limited by a four-year statute of limitations. *See Montin v. Estate of Johnson*, 636 F.3d 409, 412 (8th Cir. 2011); *Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904, 912–13 (D. Neb. 2004); Neb. Rev. Stat. § 25-207; *Bauers v. City of Lincoln*, 514

N.W.2d 625, 634 (Neb. 1994) (relying on *Bridgeman v. Nebraska State Pen*., 849 F.2d 1076, 1077 (8th Cir. 1988)). Although state law establishes the statute of limitations for § 1983 actions, federal law controls on the issue of when the statute of limitations begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Montin*, 636 F.3d at 413. The standard rule is that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Wallace*, 549 U.S. at 388. Under that rule, the tort cause of action accrues, and the statute of limitations commences to run, when the plaintiff knew or should have known of the injury that forms the basis of the claim. *Id*. at 391.

Plaintiff's Second Amended Complaint states that the events giving rise to his claims occurred from November 16, 2015 to December 25, 2015. (Filing 44 at CM/ECF p. 5.) The court will assume, as Defendants do, that the continuing violations doctrine applies to the determination of the accrual of Plaintiff's claims. *See Montin*, 636 F.3d at 415 (The continuing violations doctrine applies "where it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights, as in the context of an Eighth Amendment claim for cruel or unusual punishment or a discrimination claim alleging ongoing implementation of a discriminatory wage scheme."). Under the continuing violations doctrine, "a continuing violation does not excuse a plaintiff from complying with the applicable statute of limitations—it simply allows the plaintiff to include, in an initial complaint, allegedly unconstitutional acts that occurred before the limitations period, provided that at least one of the acts complained of falls within the limitations period." *Ashokkumar v. Elbaum*, 932 F. Supp. 2d 996, 1015 (D. Neb. 2013) (citing *Zotos v. Lindbergh Sch. Dist*., 121 F.3d 356, 362 (8th Cir. 1997)).

As applied here, Plaintiff's first possible claim accrued on November 16, 2015, and his last possible claim accrued on December 25, 2015. Applying the four-year statute of limitations, his earliest claim expired on November 16, 2019, and his last possible claim expired on December 25, 2019. However, Vansant and Dr. Esch were not sued until, at the earliest, March 11, 2020, which was over two

months after the statute of limitations on Plaintiff's latest possible claim expired as to each Defendant. (Filing 50.) *See also* Fed. R. Civ. P. 3 ("A civil action is commenced by filling a complaint with the court."). As neither Defendant was timely sued, Plaintiff's claims against Vansant and Dr. Esch are barred by the statute of limitations unless Plaintiff can demonstrate a basis for tolling the statute.

"In a § 1983 action, . . . Congress has specifically directed the courts, in the absence of controlling federal law, to apply state statutes of limitations and state tolling rules unless they are 'inconsistent with the Constitution and laws of the United States.'" *Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983) (quoting 42 U.S.C. § 1988 (1976)). As relevant here, Nebraska law permits tolling of a statute of limitations where a plaintiff is under a statutory disability and where equitable tolling is warranted. *See Tolling of the statute of limitations*, 5 Neb. Prac., Civil Procedure § 5:29.[6]

Nebraska's tolling statute, Neb. Rev. Stat. § 25-213, provides that the limitations period may be tolled where a person is suffering from a "mental disorder" or is imprisoned. Neb. Rev. Stat. § 25-213. A "mental disorder," as used in Neb. Rev. Stat. § 25-213, "is a condition rendering a plaintiff 'incapable of understanding his legal rights or instituting legal action,' or 'evaluat[ing] and communicat[ing] information necessary to protect [his] rights.'" *Montin*, 636 F.3d at 413 (quoting *Kraft v. St. John Lutheran Church*, 414 F.3d 943, 948 (8th Cir. 2005)). In addition, the Nebraska courts have interpreted section 25-213 to mean that a term of imprisonment does not toll the limitations period absent "a showing of a recognizable legal disability, separate from the mere fact of imprisonment, which prevents a person from protecting his or her rights." *Gordon v. Connell*, 545

_____

[6] In Nebraska, a statute of limitations can also be tolled "for limited periods of time for causes of actions belonging to decedents, for causes of actions against debtors in bankruptcy, for causes of actions that are filed and then subsequently dismissed, and for causes of action that are submitted to a dispute resolution process pursuant to the Dispute Resolution Act." *See Tolling of the statute of limitations*, 5 Neb. Prac., Civil Procedure § 5:29. Plaintiff has not pled any of these tolling exceptions, and, on the face of the Second Amended Complaint, none of these tolling exceptions would apply to this matter.

N.W.2d 722, 726 (Neb. 1996); *see also Martin v. Nebraska Dep't of Corr. Staff*, No. 8:17CV250, 2017 WL 4862772, at *1 (D. Neb. Oct. 26, 2017).

Here, Plaintiff's imprisonment alone is insufficient to toll the statute of limitations. Plaintiff filed this action while incarcerated and continued to file multiple pleadings and other materials while incarcerated. He also was able to request his medical records from the DCDC while in the custody of the NDCS. (*See* Filings 46 & 48.) Thus, Plaintiff's imprisonment was clearly not a barrier to filing this action against Defendants within the four-year statute of limitations. To the extent that the allegations of the Second Amended Complaint could be read as alleging that the failure to treat his medical condition resulted in a "mental disorder" that would toll the limitations period, the alleged inadequate medical care was resolved on or about December 25, 2015. Thus, even if the statute is tolled for that period, it still expired as of December 25, 2019, and Plaintiff's claims remain time-barred as to Defendants.

Nebraska also recognizes the doctrine of equitable tolling, where "a court may excuse the party's failure to file within the limitations period if that failure was the result of circumstances beyond the party's control." *Tolling of the statute of limitations*, 5 Neb. Prac., Civil Procedure § 5:29. For purposes of equitable tolling, "[i]f a party is prevented from asserting its claim by a paramount authority, then the period in which the party was prevented from asserting its claim is excluded from the limitations period. A paramount authority for purposes of the doctrine is either a court or a governmental entity." *Id*. (footnote omitted). In addition, "[e]quitable tolling requires . . . due diligence on the part of the claimant." *State v. Conn*, 914 N.W.2d 440, 446 (Neb. 2018) (citing *In re Estate of Fuchs*, 900 N.W.2d 896, 905 (Neb. 2017)).

Plaintiff's Second Amended Complaint does not contain any allegations that any "paramount authority" prevented him from bringing his Eighth Amendment claim against Vansant or Dr. Esch prior to December 25, 2019. Though his Brief in response to Dr. Esch's summary judgment motion was improperly filed and the

court need not consider it, the court notes Plaintiff's apparent argument that there is no statute of limitations issue because he filed his Second Amended Complaint on June 5, 2019, and "because of records needed to get the names of Defendants. A order from the Judge." (Filing 82 (punctuation as in original).) Liberally construed, Plaintiff may be asserting that he needed a court order requiring him to provide the names of Defendants in order to request records from the DCDC. Even if the court assumes that is true, the court had ordered Plaintiff at least twice prior to December 25, 2019, to provide identifying information and/or names for the individual defendants responsible for the alleged deliberate indifference to his medical needs. (Filing 35 at CM/ECF p. 11; Filing 42 at CM/ECF pp. 9–10.)

Nothing in the record suggests that Plaintiff was prevented from ascertaining Defendants' names by any action of the court.[7] Rather, the pleadings, as set forth in detail above, demonstrate that the court did not impede Plaintiff but, in fact, repeatedly gave Plaintiff opportunities to file his claim properly and against the proper defendants. Moreover, Plaintiff's decision to initiate a records request to the DCDC only after the court's January 2, 2020 Memorandum and Order directing him to identify individual defendants and notify the court of their names does not suggest due diligence on his part. *See Conn*, 914 N.W.2d at 446. As such, the court concludes Plaintiff cannot demonstrate that the equitable tolling exception applies to this matter.

Plaintiff has not pled and the allegations in the Second Amended Complaint do not support a finding that any tolling exceptions available in Nebraska apply to this case to extend the statute of limitations beyond December 25, 2019.

---

[7] Indeed, Plaintiff named "Dr. Ash" as a defendant in his Amended Complaint which may be reasonably inferred to refer to Dr. Esch. (*See* Filing 36.) However, if "Dr. Ash" was referring to Dr. Esch, then Plaintiff failed to name Dr. Ash/Esch in his Second Amended Complaint when specifically given the opportunity. (Filing 42 at CM/ECF p. 8.)

**B. Relation Back Doctrine**

Because his claims against Vansant and Dr. Esch were time-barred when they were named as Defendants in this suit, Plaintiff can only maintain his cause of action against them if he can apply the relation back doctrine. As set forth in Fed. R. Civ. P. 15(c)(1):

> **(c) Relation Back of Amendments.**
> **(1)** ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>> **(A)** the law that provides the applicable statute of limitations allows relation back;
>> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>> **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>>> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Here, the analysis of the relation back doctrine clearly falls under Rule 15(c)(1)(C) as Plaintiff's Second Amended Complaint and supplemental March 11, 2020 letter naming Vansant and Dr. Esch as Defendants changed the parties against whom Plaintiff's claim was asserted.

The relation back doctrine as set out in Federal Rule of Civil Procedure 15(c)(1)(C)(I) [sic], which in turn cites Federal Rule of Civil Procedure 4(m), describes a situation where the name of a

defendant can be changed within the summons time period, provided that he or she has notice of the action. Fed. R. Civ. P. 15(c)(1)(C)(i). In sum, Rule 15(c)(1)(C) has three requirements. Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii). First, the requirements of Rule 15(c)(1)(B) must be met. Fed. R. Civ. P. 15(c)(1)(C). Second, the newly named defendant must have received notice of the action such that he will not be prejudiced in defending on the merits within the period provided by Rule 4(m), that is, [90] days from the filing of the original complaint. Fed. R. Civ. P. 4(m), 15(c)(1)(C)(I) [sic]. Finally, the newly named defendant knew or should have known, within the Rule 4(m) period, that but for a mistake concerning the proper party's identity he would have been named in the original complaint. Fed. R. Civ. P. 15(c)(1)(C)(ii).

*Smetzer v. Newton*, No. 1:10-CV-93-JVB, 2010 WL 3219135, at *9 (N.D. Ind. Aug. 13, 2010).

The court concludes, as Defendants fairly concede, that the first requirement of the relation back doctrine is satisfied. Plaintiff claims in his Second Amended Complaint that Defendants acted with deliberate indifferent to his serious medical needs by failing to give him his prescribed medication between November 16, 2015, and December 25, 2015, in violation of his Eighth Amendment right. (Filing 44.) Such claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—" in Plaintiff's original Complaint. (*See, e.g.*, Filing 1 at CM/ECF pp. 6–7; Filing 6 at CM/ECF p. 2.)

Plaintiff, however, cannot satisfy the second and third requirements of the relation back doctrine which require that "'within the period provided by Rule 4(m) for serving the summons and complaint'" Defendants "'received such notice of the action that [they] will not be prejudiced in defending on the merits'; [and they] 'knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity.'" *Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 897 (8th Cir. 2015) (quoting Fed.R.Civ.P. 15(c)(1)(C)). Rule 4(m) requires service of summons and a complaint within 90 days after a complaint is filed. Fed. R. Civ. P. 4(m). Here, the original Complaint (filing 1) was

filed on September 6, 2017, but the court considered the Complaint to include Plaintiff's supplemental filings, the last of which was filed December 22, 2017. (*See* Filing 18; Filing 35 at CM/ECF p. 1.) Thus, at the latest, Plaintiff would have to show that Vansant and Dr. Esch were on notice of the action by March 22, 2018, and also should have known by that date that they "would have been named as . . . defendant[s] but for an error." *Kruspki v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." (emphasis in original)).

The undisputed evidence establishes that Vansant and Dr. Esch were not aware of or on notice of this action until June 18, 2020, and June 19, 2020 respectively. (Filing 65-1, ¶¶ 5–8; Filing 80-1, ¶¶ 4–7.) Contrary to Plaintiff's assertion in his Brief, the court never notified "the Department of Douglas County Corrections Medical Care and DCC Medical . . . by mail" of this action prior to service of summons on Defendants. (Filing 82; *see* Docket Sheet.) Thus, neither Defendant was on notice, or should have been on notice, of this action within the requisite Rule 4(m) time frame after the original Complaint was filed.[8] Consequently, Plaintiff's Second Amended Complaint naming Defendants as parties after the statute of limitations period expired fails to satisfy all the requirements of the relation back doctrine.

---

[8] Even if the relation back doctrine was not limited to the original Complaint, Plaintiff would still fail to meet the requirements to relate back to any subsequent pleading. If Plaintiff tried to relate back to his Amended Complaint (filing 36) filed November 26, 2018, then he would have to prove Defendants received notice by February 25, 2019. If Plaintiff were trying to relate back to his Second Amended Complaint (filing 44) filed June 5, 2019, he would have to prove Defendants received notice by September 3, 2019. Clearly, Defendants did not receive notice within those time frames.

# VII. CONCLUSION

Plaintiff was required to bring his § 1983 claim for an alleged deprivation of his Eighth Amendment right against Defendants by December 25, 2019. While his Complaint, Amended Complaint, and Second Amended Complaint were all filed before that date, Plaintiff did not name Vansant or Dr. Esch as Defendants until March 11, 2020, after the limitations period expired. Plaintiff has failed to plead or demonstrate that any tolling provision applies to make his claim timely, and the undisputed evidence establishes that the relation back doctrine is inapplicable. Accordingly, Defendants are entitled to dismissal of this matter with prejudice.

IT IS THEREFORE ORDERED that:

1.    The Motion for Summary Judgment (filing 64) filed by Defendant Sandra Vansant is granted.

2.    The Motion for Summary Judgment (filing 79) filed by Defendant Jacqueline Esch, MD, is granted.

3.    Plaintiff's pending motion for status (filing 85) is denied as moot.

4.    This matter is dismissed with prejudice.

5.    The court will enter judgment by separate document.

Dated this 30th day of March, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

31